IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

October 16, 2003 Session

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. MW, IN THE MATTER OF: IW, A CHILD UNDER 18 YEARS OF AGE

**Direct Appeal from the Juvenile Court for Hamblen County**
**No. 01-CV-253     Hon. Kendall Lawson, Judge**

**FILED NOVEMBER 12, 2003**

**No. E2003-00325-COA-R3-CV**

The Trial Judge held the minor child was dependent and neglected and that the mother had committed severe child abuse against her child. Custody was awarded to DCS who was relieved of making reasonable efforts to reunify the mother and child. The mother appealed, insisting there is no evidence to support the Trial Court's findings. We affirm the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which , CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR.J., joined.

J. Eric Harrison, Morristown, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, and
Juan G. Villasenor, Assistant Attorney General, Nashville, Tennessee, for Appellee.

## OPINION

The Department of Children's Services (DCS) filed a Petition on March 2, 2001, alleging that IW (age 6 months) was dependent and neglected. The Juvenile Court determined that

the child's maternal grandmother and his mother had taken the child to Morristown Hamblen Hospital, where it was determined that he had multiple injuries including a skull fracture, femur fracture, ulna fracture, humerus fracture, and severe bruising. The Juvenile Court entered a protective custody order and placed IW in the custody of DCS, and later a consent order was entered where the parties agreed that DCS would have custody and the mother would have no contact with the child. At a subsequent hearing, the Juvenile Court determined there was clear and convincing evidence that mother had committed severe child abuse upon IW, and it was further determined that the mother was not a credible witness, and she gave contradictory statements regarding the child's injuries. The Court also found that the mother did not seek treatment for the child for over twenty-four hours after being injured, and concluded that she would not protect the child and that she tried to mitigate her boyfriend, Peter Bishop's actions, who had inflicted severe injuries upon the child. The Court ordered that the child would remain in DCS custody. The mother appealed the Juvenile Court's judgment to the Circuit Court.

A *de novo* hearing was held on June 21, 2002, and the Court, after hearing numerous witnesses, including the mother, observed that while he had considered the mother's mental disability, he felt she had the ability to understand that a circumstance or situation was dangerous to her child, and yet she left the child with Bishop who had demonstrated a propensity for violence. The Court found that mother knew Bishop was hiding from authorities, that he was using drugs, and that he had injured two other children. The Court found that the mother admitted Bishop jerked the baby by the arm and/or threw him down on the bed, and that Bishop was abusive to her and she was afraid of him. The Court concluded the mother knew she was in an abusive relationship, and given all of these facts, mother clearly knew and knowingly exposed the child to abuse and failed to protect him from abuse that likely could cause him great bodily harm or death. The Court further concluded the statutory requirements for showing severe child abuse had been established by clear and convincing evidence.

On appeal, the mother argues she did not commit severe child abuse as defined by Tenn. Code Ann. §37-1-102(b)(21)(A).

We review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). No presumption attaches to the court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993). As to credibility, we give great deference to the trial court's findings on that issue. *McCaleb v. Saturn*, 910 S.W.2d 412 (Tenn. 1995).

The Trial Court found by clear and convincing evidence that the mother was guilty of severe child abuse, which requires "knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death . . .". The evidence presented in the case overwhelmingly supports the Trial Court's findings. The mother gave a statement that she was facing the other direction and Bishop "jerked the baby up by the arm and put the baby in the floor on a mat. I am not sure how hard he threw the baby down because I was looking the other direction. Phillip may have threw [sic] the baby down harder than I thought."

She denied this was true at trial, instead asserting that she had no idea what happened.  Further, she admitted that Bishop did not like the baby crying, and that he cussed at the baby to get him to stop. The mother testified that Bishop had been very physically abusive to her, but stated that she thought he would not hurt the child.  In the next breath, however, she admitted that he had threatened to kill the child, and that she sometimes worried that he would hurt the baby to hurt her.  She conceded that she knew that Bishop had physically assaulted two other children, that he was being hunted by the police, and that he used drugs.  Yet she trusted him to leave the child in his care.  Generally, the witness was conflicted and inconsistent in her factual statements made to the Court.

The mother claims that she could not have "knowingly" failed to protect the child because she did not "know" that he had been abused.[1]

Abuse is defined in the statute as:

> When a person under 18 years of age is suffering from, a sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability, or physical or mental condition caused by brutality, neglect, or other actions or inactions of a parent, relative, guardian or caretaker.

Tenn. Code Ann. § 37-1-102(b)(1).

IW clearly suffered abuse at the hands of Bishop on February 27, 2001 and before, based upon his injuries, and the mother admitted she had witnessed Bishop being abusive to the child.  The mother cannot now claim that she did not realize Bishop's behavior constituted abuse and use that as an excuse for her failure to protect the child.  She is charged with knowing the law and protecting the child and cannot be relieved from these consequences, simply because she claims to have not understood, or to have low intellectual functioning, or bad memory.

The experts who were questioned agreed that the mother had the capacity to lie to protect herself.  The mother herself admitted that she lied to her sister, and claimed that she lied to authorities about what happened to the child.  The evidence clearly establishes that the mother knew Bishop was a danger to her child and chose to ignore it.  Her actions constitute severe child abuse as defined in the statute.  *See Nash-Putnam v. McCloud*, 921 S.W.2d 170 (Tenn. 1996); *State of Tenn. Dept. of Children's Services v. LS*, 2000 WL 1425234 (Tenn. Ct. App. Sept. 28, 2000); *In the Matter of S.M.C. and J.L.C.*, 1999 WL 378742 (Tenn. Ct. App. June 11, 1999).

---

[1] Mother's attorney admitted that she pled guilty to failing to report child abuse.  This is governed by Tenn. Code Ann. §37-1-412, which states "Any person who knowingly fails to make a report required by § 37-1-403 commits a Class A misdemeanor."  Thus, mother has already admitted in a judicial proceeding that she had knowledge of the abuse, and is now in no position to deny that fact.

We affirm the Judgment of the Trial Court and assess the cost to MW, the mother.

_____
HERSCHEL PICKENS FRANKS, J.